**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TORY DEARMOND, CINDY DORE, RADJET, LLC, CHARLES BRUNET, ALVA KERR, KIRK TIDWELL, G.P.A.-HOUSTON, INC. A/K/A GREYHOUND PETS OF AMERICA HOUSTON, WILLIAM K. COULTER, RYAN WROBLESKE, ANDREA FREEDMAN, GEORGE ARNOLD, TERAL BENNET, NANCY BROWNLEE, STEVEN HOFFMAN, JOHN FRY, JASON LEBLANC, DONALD MILLER, MARIA GUADALUPE NORTHAM, LOUIS PERRY, SUMEET RAI, and SUSANA CISNEROS, | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. |
| VS. | § § § | DEMAND FOR JURY TRIAL |
| SECURITIES AND EXCHANGE COMMISSION, UNKNOWN AGENTS OF THE SECURITIES AND EXCHANGE COMMISSION, UNKNOWN AGENTS OF THE UNITED STATES MARSHAL'S OFFICE, and RALPH S. JANVEY, APPOINTED RECEIVER FOR STANFORD INTERNATIONAL BANK, LTD, STANFORD GROUP COMPANY, AND STANFORD CAPITAL MANAGEMENT, LLC. | § § § § § § § § § § § § § § | |

**COMPLAINT**

PLAINTIFFS bring this complaint against DEFENDANTS **SECURITIES AND EXCHANGE COMMISSION** and **UNKNOWN AGENTS OF THE SECURITIES AND EXCHANGE COMMISSION** for violation of Plaintiffs' rights under the U.S. Constitution, along with actions arising from Texas law for misrepresentation, negligence and gross negligence.

**SUMMARY**

President Thomas Jefferson declared that, "The true foundation of republican government is the equal right of every citizen in his person and property and in their management."

In order to assure these basic liberties, amendments to the United States Constitution were enacted which help define the boundaries to our government's power. Those lines were crossed when the Securities and Exchange Commission and those acting with it took control of the Stanford Group Company and related entities on February 16, 2009. Acting in secret on Presidents' Day, the Defendants seized private property and suppressed free speech and assembly. Defendants took money and other valuable assets from those who were not accused of any wrongdoing. Since that time, Defendants have not come forward with any evidence that the owners of the seized accounts did anything wrong, yet Defendants continue to exercise control over Plaintiffs' property in a reckless and negligent manner. Defendants' actions have caused great damage to Plaintiffs and their property.

This lawsuit is not about any alleged wrongdoing on the part of the Stanford Group Company or its affiliates. It seeks redress and compensation for actions of Defendants that are violating the protections of the Constitution.

## PARTIES

1.   PLAINTIFF TORY DEARMOND ("DeArmond") is a natural person
     residing in Harris County, Texas.

2.   PLAINTIFF CINDY DORE ("Dore") is a natural person residing in
     Houston, Harris County, Texas.

3.   PLAINTIFF RADJET, LLC ("Radjet") is a business organized under
     the laws of the State of Texas with its principal office in Houston,
     Texas.

4.   PLAINTIFF CHARLES BRUNET ("Brunet") is a natural person
     residing in Houston, Harris County

5.   PLAINTIFF ALVA KERR ("Kerr") is a natural person residing in
     Houston, Harris County, Texas.

6.   PLAINTIFF KIRK TIDWELL ("Tidwell") is a natural person residing
     in La Mesa, Texas.

7.   PLAINTIFF G.P.A.-HOUSTON, INC. a/k/a GREYHOUND PETS OF
     AMERICA HOUSTON ("Greyhound Pets") is a 501(c)(3) charitable
     organization with its offices in Houston, Harris County, Texas.

8.   PLAINTIFF WILLIAM K. COULTER ("Coulter") is a natural person
     residing in Houston, Harris County, Texas.

9.   PLAINTIFF RYAN WROBLESKE ("Wrobleske") is a natural person
     residing in Houston, Harris County, Texas.

10.  PLAINTIFF ANDREA FREEDMAN ("Freedman") is a natural
     person residing in Bellaire, Harris County, Texas.

3

11. PLAINTIFF GEORGE ARNOLD ("Arnold") is a natural person residing in Houston, Harris County, Texas.

12. PLAINTIFF TERAL BENNETT ("Bennett") is a natural person residing in Houston, Harris County, Texas.

13. PLAINTIFF NANCY BROWNLEE ("Brownlee") is a natural person residing in Houston, Harris County, Texas.

14. PLAINTIFF STEVEN HOFFMAN ("Hoffman") is a natural person residing in Houston, Harris County, Texas.

15. PLAINTIFF JOHN FRY ("Fry") is a natural person residing in Houston, Harris County, Texas.

16. PLAINTIFF JASON LEBLANC ("LeBlanc") is a natural person residing in Katy, Fort Bend County, Texas.

17. PLAINTIFF DONALD MILLER ("Miller") is a natural person residing in Houston, Harris County, Texas.

18. PLAINTIFF MARIA GUADALUPE NORTHAM ("Northam") is a natural person residing in Houston, Harris County, Texas.

19. PLAINTIFF LOUIS PERRY ("Perry") is a natural person residing in Houston, Harris County, Texas.

20. PLAINTIFF SUMEET RAI ("Rai") is a natural person residing in Houston, Harris County, Texas.

21. PLAINTIFF SUSANA CISNEROS ("Cisneros") is a natural person residing in Houston, Harris County, Texas.

22.　DEFENDANT **Securities and Exchange Commission** *("SEC")* may be served at its regional office in Fort Worth by service upon Rose L. Romero, Regional Director, 801 Cherry Street, Suite 1900, Fort Worth, Texas 76102.

23.　DEFENDANTS **Unknown agents of the Securities and Exchange Commission**, ("SEC Agents") may be served by service upon their Regional Director, Rose L. Romero, Regional Director, 801 Cherry Street, Suite 1900, Fort Worth, Texas 76102.

24.　DEFENDANTS **Unknown agents of the United States Marshal's Office,** ("U.S. Marshals") may be served at the United States Courthouse, 515 Rusk, Suite 10017, Houston, Texas 77002.

25.　DEFENDANT **RALPH S. JANVEY, APPOINTED RECEIVER FOR STANFORD INTERNATIONAL BANK, LTD, STANFORD GROUP COMPANY, AND STANFORD CAPITAL MANAGEMENT, LLC** ("Receiver"). The principal offices for these named Stanford entities are located in Houston, Harris County, Texas. Receiver may be served at his office located at 2100 Ross Avenue, Suite 2600, Dallas, Texas 75201.

## JURISDICTION AND VENUE

26.  This action is brought under the First and Fourth Amendments to the United States Constitution.

27.  28 U.S.C.A. §959(a) provides that a Receiver may be sued without leave of the court appointing him, with respect to any of his acts or transactions in carrying on business connected with such property.

28.  Jurisdiction lies within this Court because Plaintiffs' claims arise from rights under the United States Constitution and laws of the United States, and because the principles of pendent, supplemental and/or ancillary jurisdiction relating to the state law claims asserted.

29.  Venue is proper in this Court because the Defendants deprived residents of this district of their fundamental liberties, and these violations of the United States Constitution occurred in Houston, Texas.

30.  Plaintiffs seek damages against the defendants, jointly and severally.

## FACTS

*The mission of the U.S. Securities and Exchange Commission is to protect investors, maintain fair, orderly, and efficient markets, and facilitate capital formation.*

*As more and more first-time investors turn to the markets to help secure their futures, pay for homes, and send children to college, our investor protection mission is more compelling than ever.*

U.S. Securities and Exchange Commission's mission statement at http://www.sec.gov/about/whatwedo.shtml.

31. On President's Day, February 16, 2009, agents of the SEC approached Federal Judge O'Connor in Dallas, asking that he sign an order seizing monetary assets belonging to Plaintiffs and many, many others.

32. The SEC and SEC agents approached Judge O'Connor when the United States Courthouse was closed to honor past U.S. Presidents. Neither the public nor lawyers representing the rights and interests of the Plaintiffs had access to the SEC's representations to the judge. Nor did the SEC Agents provide Plaintiffs with any notice so that they could be heard.

33. As a result of this closed meeting, and based upon representations by the SEC Agents that remain a secret to the Plaintiffs and the general public, and without input from anyone whose monetary assets might be affected, the judge signed a Temporary Restraining Order and an Order Appointing Receiver on February 16, 2009 ("Presidents' Day Orders").

34. The Presidents' Day Orders referred specifically to Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC ("the Stanford Entities"), and individual officers of the entities, R. Allen Stanford, James M. Davis, and Laura Pendergest-Holt.

35. The Presidents' Day Orders granted the SEC's ex parte request for a Temporary Restraining Order and Order Freezing Assets, among other things.

36. On information and belief, the Dallas Federal Court appointed Ralph S. Janvey as the Receiver for the named Stanford Entities upon the specific recommendation by the SEC that Mr. Janvey be appointed.

37.    The following day, on February 17, 2009, in Houston, U.S. Marshals
       surrounded the premises of Stanford's main office and took over the
       institution.

38.    Among the assets seized by the Defendants and its agents were all
       accounts held in custody for Plaintiffs by Pershing, LLC and JP Morgan
       Clearing Corp. (collectively "Plaintiffs' Accounts").    These accounts are
       owned by the Plaintiffs and used by them for checking accounts and living
       expenses.

39.    Notably, these clearing bank accounts, which are assets belonging to the
       individual depositors, are not identified in the Presidents' Day Orders.

40.    SEC Agents have admitted to seizing control of over 35,000 clearing bank
       accounts, including the accounts of Plaintiffs, denying Plaintiffs access to
       their money.

41.    The basis for the SEC's request to Judge O'Connor remains a secret;
       however the Presidents' Day Orders do not authorize the Receiver to hold
       accounts that belong to persons or entities other than the named
       Defendants in the SEC action.  The Presidents' Day Orders do not link the
       assets in any of the Plaintiffs' Accounts to any Stanford entity or to the
       officers of the Stanford entities.  In fact, the Presidents' Day Orders do not
       even mention Pershing, JP Morgan Chase, or any Plaintiff in this
       Complaint.

42.    The SEC gave no notice to Plaintiffs or other account holders that their
       assets would be seized for an indefinite period of time, denying them the

ability to make mortgage payments, pay tuition, operate their businesses, pay their taxes, buy groceries, and other activities necessary to the Plaintiffs' self-care and livelihood.

43.    The SEC has not alleged that any of the Plaintiffs have committed fraud or engaged in any wrongdoing relating to their clearing bank accounts.

44.    For instance, neither Pershing, L.L.C. nor JP Morgan Clearing Corp. is affiliated with Stanford.

45.    In fact, Pershing, L.L.C. is a subsidiary of The Bank of New York Mellon Corporation.    The assets deposited in these clearing bank accounts belong to some of the customers of the Stanford Entities, but are not assets that belong to the Stanford Entities.

46.    All the Plaintiffs in this complaint hold money in Plaintiffs' Accounts.  They write checks on or set up automatic deposits to these interest-bearing accounts.

47.    On February 17, 2009, after taking control of the Stanford Entity premises, the U.S. Marshals and other agents of SEC gathered the financial advisors employed by Stanford Group Company and told them that they could not speak to their clients and that, if they did, they could go to jail. The financial advisors were told that they could not even answer their phone if a client called.

48.    Many of the clients of these financial advisors are family members and close friends of the financial advisors.

49.    The financial advisors who are Plaintiffs to this Complaint felt strongly that

they should not be prevented from communicating with their family, friends and other clients; yet the fear of violating official orders and facing imprisonment caused them grief and anxiety on behalf of their clients, their families and themselves.

50.    Plaintiff Tory DeArmond lost her husband to cancer five days after the Presidents' Day Order froze the couple's account.    Prior to his death, Duane DeArmond had made sure there was enough cash in their account to take care of any immediate family needs.    Tory spent the days following Duane's death trying to determine how she could pay for his funeral, since their accounts have been seized by Defendants.

51.    Plaintiff Cindy Dore maintains a checking account for Radjet, the small business she recently started with her husband.    Two months ago, she was able to hire six employees to assist her in the business.    This milestone was reached after Dore and her husband had spent two years developing the business.    The account is used to cover various business expenses such as payroll and health insurance costs for her six employees.    Like the other clearing bank accounts, Cindy's funds were frozen by the actions of Defendants.    Cindy is anxious because Radjet doesn't have any other accounts to pay its employees.    This clearing bank account is also used to pay vendors for materials and services provided to her company, and is necessary for operations.    Without access to these funds, Radjet cannot obtain services and continue to operate.    Radjet was further damaged by the failure of the Defendants to advise or give notice

of their proposed freeze. Cindy sent approximately $50,000.00 worth of checks to vendors just days before her account was frozen. Although the account has more than enough money to cover these checks, the freeze on the account caused these checks to be returned and stamped "insufficient funds," thereby damaging the business relationships she had with these vendors. Radjet has multiple projects scheduled in the upcoming month but does not have access to the money required to send employees to the job sites or to secure the materials needed for the projects. Cindy's continued inability to access the company's money prevents her from accepting additional business opportunities because she cannot be sure that she will be able to adequately provide the resources necessary for the job. Cindy Dore and Radjet, LLC have suffered monetary damages from the inability to perform service to their clients and pay their immediately due bills.

52. Due to the constraints of multiple sclerosis, Alva Kerr resides in an assisted care facility in Houston where she enjoys living in a community of those who have need of daily care. Alva pays her monthly rent at the assisted care facility through an automated draft from her clearing bank account to another checking account from which her daughter, Vickie Karp, pays the facility. Because the Receiver froze Alva's account, her money was unavailable for the payment in late February. Her daughter Vickie paid the care facility $1000.00. Vickie doesn't know how she will come up with the full $2000.00 she must pay the facility this month to keep

her mother in the assisted care she requires for her MS. Vickie works as a real estate agent and is extremely worried about how she will care for her mother if the money is not returned immediately. Alva has been in the hospital recuperating from surgery and does not yet know that her money is frozen. Vickie is torn. She doesn't want her mother to worry about financial matters while she is recuperating, but she doesn't want to hide the truth from her either. Alva is suffering immediate harm by her inability to pay for her facility and will continue to accrue monetary damages if her money is not returned to her.

53. Catherine Coulter runs the Greyhound Pets of America Houston organization that places retired greyhounds for adoption. This 501(c)(3) nonprofit organization depends on the donations that are now frozen in its clearing bank account. Catherine is very concerned about how to pay her employees in the upcoming payroll cycle. These employees love their jobs caring for the animals and they very much depend on their wages. Catherine also worries about how she will feed the 50 dogs in their care. One of the dogs required surgery this week, but because of the freeze on the account, there was no money available to cover this medical procedure and the cost of after care. Catherine had to put the dog's surgery on her personal credit card, which will incur interest that she didn't anticipate.

54. William K. Coulter is Catherine's husband. He put his own retirement funds in a clearing bank account, to which he now has no access. He is

unable to use his own money for his regular needs or to access it to make decisions about how to invest it during this difficult time for the financial markets.

55.   Kirk Tidwell is an independent cotton farmer in La Mesa, Texas. Kirk has a wife and two children who depend on the cotton he harvests from a few acres of land. Kirk keeps his household and farm operating expenses in a clearing bank account. His farming operations require purchase of fuel, seed and other necessary items. He believes he has enough money to sustain his family for about two to four weeks before he runs out and he faces a critical situation.

56.   Ryan Wrobleske is a financial advisor employed by Stanford Group Company. On February 17, 2009, he was informed along with the other employees that the clearing bank accounts belonging to his clients, his family and himself were frozen. Ryan wanted to contact his clients immediately to tell them about the freeze and to advise them to take action necessary to cover outstanding checks and bills. But Ryan was told that if he communicated with his clients, he could be put in jail. He was escorted from the Stanford building without access to his computer or client information located in his office. Ryan is damaged because Defendants, under color of law, deprived him of his First Amendment rights to speak to and assemble with clients who have clearing bank accounts. Ryan's own mother has a clearing bank account that Ryan set up for her. Ryan's own situation mirrors that of his clients: his Pershing account is frozen and he

therefore cannot pay his house note this month, or his car note, or buy groceries. As a financial advisor, Ryan is greatly concerned about the costs to his clients and family that are incurred by paying for groceries and light bills with credit cards that charge interest. He is also concerned about the impact to his client's credit and his own when they cannot make the minimum payments due on their credit cards this month.

57. Andrea Freedman is a mother with two small children. She is also a financial advisor employed by Stanford Group Company. Like Ryan Wrobleske, she was told that the clearing bank accounts had been frozen and that she could face imprisonment if she contacted her clients -- friends and family about their accounts. Andrea kept her checking and savings accounts with Pershing's clearing bank accounts and has no access to her money to pay her bills or buy groceries.

58. George Arnold is also a financial advisor employed by Stanford Group Company. He has been damaged by the actions of the Defendants when they took control of his accounts. George cannot pay for his mortgage or car payments or other necessary bills. George's wife has a Pershing account and that too is frozen. Similarly, George's brother cannot access the money in his clearing bank account.

59. Plaintiffs Teral Bennett, Nancy Brownlee, Steven Hoffmann John Fry, Jason LeBlanc, Donald Miller, Maria Guadalupe Northam, Louis Perry, Sumeet Rai, and Susan Cisneros are also investors and financial advisors who have no access to the accounts seized by Defendants. They have

14

also been further damaged by the fear that contacts to their clients will result in arrest and confinement.

## CLAIMS AND DAMAGES

60.    Defendants unlawfully seized Plaintiffs' accounts. At the same time, and in violation of all applicable industry norms, Defendants suppressed communication between the financial advisors and other plaintiffs so that the accounts could not be managed.

61.    Moreover, upon information and belief, neither the Receiver nor the SEC Agents had any plan for handling customer instructions, nor did Defendants provide personnel that could receive and act upon customer instructions.

62.    The result was that Defendants took control over Plaintiffs' Accounts, acted intentionally or with gross negligence, and subjected the Plaintiffs' Accounts to the market free fall that followed this unprecedented action.

63.    Despite the statement on the Receiver's website, Defendants did not "perform all acts necessary to conserve, hold, manager and preserve the value" of the accounts it seized. Indeed, Defendants' actions caused massive losses to the value of Plaintiffs' accounts. In addition to the individual hardships suffered by all, the Plaintiffs were damaged by these losses of value.

64.    The losses that occurred in the Plaintiffs' Accounts are the direct and foreseeable consequences of Defendants' actions -- neither the Plaintiffs

nor their financial advisors had the ability to move assets to cash, reallocate or undertake any measures to protect the assets. In other words, the Defendants took Plaintiffs' property, disregarded industry standards while they exercised dominion and control over those assets, and are refusing to give it back. The accounts have lost value since the ability to direct the accounts was taken by Plaintiffs. Even if the accounts were returned now, massive damages have been caused by Defendants' actions.

65.    Based on the foregoing facts and additional facts that will be discovered by the parties during the pretrial discovery in this litigation, Plaintiffs bring the following causes of action which have damaged Plaintiffs in an amount that exceeds the jurisdictional requirements of this Court.

## FIRST CLAIM FOR RELIEF
## Violations of the First Amendment

66.    Plaintiffs adopt and incorporate paragraphs 31 through 65 above.

67.    Violation of Plaintiffs' rights to free speech and freedom of association and assembly under the First Amendment occurred when the Defendants ordered the financial advisors not to speak to any of their clients and represented that a violation of that order was punishable by incarceration.

68.    By suppressing Plaintiffs' First Amendment rights, all Plaintiffs were damaged by Defendants' restriction on rights of free speech and assembly.    Furthermore, by prohibiting communications between the financial advisors and their clients, Defendants effectively prohibited

investors from exercising control over their own property in a volatile financial market.

## SECOND CLAIM FOR RELIEF
## Violations of the Fourth Amendment

69.  Plaintiffs adopt and incorporate paragraphs 31 through 65 above.

70.  The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures, shall not be violated

71.  Defendants violated Plaintiffs' Fourth Amendment rights by seizing Plaintiffs' Accounts unreasonably and without probable cause.

72.  The seizure, without probable cause, deprived the Plaintiffs of their rights to manage and protect their property in a volatile financial market. Plaintiffs seek damages for the diminished value of their property caused by the unjustified seizure.  These damages continue to accrue and will be established at trial.

## THIRD CLAIM FOR RELIEF
## Conversion

73.  Plaintiffs adopt and incorporate paragraphs 31 through 65 above.

74.  In seizing Plaintiffs Accounts and depriving them of their assets, Defendants and their agents have taken and converted property owned by the Plaintiffs, thus damaging Plaintiffs in a manner that is ongoing, so long as Defendants continue to wrongly hold Plaintiffs' Accounts.

75.  This claim arises under state law.

## FOURTH CLAIM FOR RELIEF
### Negligence

76.   Plaintiffs adopt and incorporate paragraphs 31 through 65 above.

77.   Defendants acted negligently when they disregarded industry standards and failed to perform all acts necessary to conserve, hold, manage and preserve the value of Plaintiffs' accounts when Defendants took Plaintiffs' property and exercised dominion and control over those assets. Further, Defendants continue to act negligently by their refusal to return Plaintiffs' property.

78.   As a result, Plaintiffs have been further damaged by Defendants' negligence because Plaintiffs' accounts have lost value since Defendant took away Plaintiffs' ability to direct their accounts.

## FIFTH CLAIM FOR RELIEF
### Gross Negligence

79.   Plaintiffs adopt and incorporate paragraphs 31 through 65 above.

80.   Defendants' acts constitute gross negligence because of their willful and/or reckless disregard for Plaintiffs' constitutional rights under the First and Fourth Amendments to the U.S. Constitution. Defendants acted intentionally or with reckless disregard when their unlawful seizure of and dominion over Plaintiffs' property deprived Plaintiffs' of the right to access and manage their own property, resulting in damage to the value of Plaintiffs' assets. Defendants continue to act intentionally, willfully or in

reckless disregard by keeping Plaintiffs' property and refusing to return it.

81.     As a result, Plaintiffs are damaged and continue to be damaged by
        Defendants' gross negligence.

## PRAYER

For the reasons stated in this Complaint, Plaintiffs pray for judgment as follows:

- actual damages for the violations of U.S. Constitution and state law claims;
- prejudgment interest on all actual and special damages to which Plaintiffs are entitled;
- attorneys' fees on all claims to which Plaintiffs are entitled;
- punitive damages on all claims to which Plaintiffs are entitled;
- pretrial and post-trial interest and court costs;

Plaintiffs further pray that, on final trial, the Court award to Plaintiffs all elements of damage set forth herein, and for such other and further relief, both special and general, at law and in equity, to which the Plaintiffs show themselves to be justly entitled.

## JURY DEMAND

Plaintiffs respectfully request that when this case proceeds to trial, it be placed on the Court's jury trial docket.

RESPECTFULLY SUBMITTED,

*/s/*

_____

Michael J. Stanley
Texas Bar No. 19046600
Federal Bar I.D. 13283
STANLEY FRANK & ROSE LLP
7026 Old Katy Road, Suite 259
Houston, Texas 77024
(713) 980-4381
(713) 980-1179

*Attorney in Charge for Plaintiffs*

Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record in accordance with the District's ECF service rules on this 4th day of March, 2009.

*/s/*

_____

**Michael J. Stanley**